<hr />

CITY OF NEW YORK v. BRYAN et al.

(Supreme Court, Appellate Division, First Department.  March 5, 1909.)

1. CORPORATIONS (§ 391*)—CREATION—RIGHTS OF STATE.

The right to be a corporation and to exercise corporate powers is derived solely from the state, which has the right to limit the period of existence, to provide conditions precedent or subsequent by laws existing at the time of creation, or by laws subsequently passed to destroy the corporation for such reasons as may seem to the Legislature sufficient.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1573; Dec. Dig. § 391.*]

2. RAILROADS (§ 14*) — TERMINATION OF CORPORATION — EFFECT — RIGHTS IN STREETS.

On the termination of the corporate existence of a railroad company organized under the general railroad law of 1850 (Laws 1850, p. 211, c. 140), franchises, rights and privileges granted by a city did not cease, but passed to the directors as trustees, under Gen. Corp. Law (Laws 1892, p. 1811, c. 687), § 30, of the creditors, stockholders, and members of the company, subject to, no interference by the city, where the franchises, etc., had been acted under, much money was expended in reliance thereon, and the road was nearly completed.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 14.*]

Submitted controversy between the City of New York and Edward P. Bryan and others.  Judgment for defendants.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Francis K. Pendleton, Corp. Counsel (Theodore Connoly, of counsel, and Clarence L. Barber, on the brief), for plaintiff.

Strong & Cadwalader (Morgan J. O'Brien, of counsel), for defendants.

CLARKE, J.  The agreed statement of facts sets up that the New York & Long Island Railroad Company was incorporated under the general railroad law of 1850 (Laws 1850, p. 211, c. 140) by the filing of its articles of incorporation in the office of the Secretary of State on July 30, 1887, and was prior to January 1, 1907, engaged in the construction of a railroad and tunnel in the city of New York pursuant to the authority which it claimed was and is conferred upon it by virtue of its filing the said articles of incorporation and by the general railroad law of 1850 and the acts supplemental thereto and amendatory thereof, especially chapter 582, p. 872, Laws 1880; that the purpose for which said railroad was incorporated was the construc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tion, maintenance, and operation of a railroad from a specified point in Long Island City, thence partly underground and partly in cutting, to the East river, thence under the East river by means of a tunnel and under streets and lands in the city of New York to a designated point in said city; that by ordinance of the board of aldermen of the then city of New York, approved December 31, 1890, the said city assented to the construction of a double-track railroad by the New York & Long Island Railroad by and through a tunnel beneath the surface of Forty-Second street from its easterly end to a specified point, said assent being given upon certain conditions and terms therein specified; that on October 27, 1891, the board of aldermen of Long Island City, by an ordinance approved by the mayor of said city, assented to the construction of a double-track railroad by said railroad company upon certain routes therein described; that on or about August 13, 1891, the directors of said railroad company duly altered and changed the route and profile of the defendant's route to conform to the route as assented to by the board of aldermen of the then city of New York, also to conform with the route as assented to by the ordinance of the common council of the said Long Island City; that on January 11, 1892, the board of directors of said railroad company passed a resolution accepting the rights, privileges, and grants set forth in the resolution of the board of aldermen of the city of New York, adopted as aforesaid, which resolution of acceptance, duly certified and under seal of said railroad company, was thereafter filed with the said board of aldermen on or about February 2, 1892; that on or about the 6th day of February, 1906, the said railroad company, as plaintiff, brought an action in the Supreme Court against the city of New York and others as defendants. In said action, said court duly determined on the 26th day of December, 1906, that the said plaintiff had complied with all laws and done all lawful acts to entitle it to construct, maintain, and operate its proposed line of railroad as then under construction by it in portions of the route as to which the assents of the former city of New York and of Long Island City had been given; that the plaintiff had acquired at the time of the beginning of said action, and then, December 26, 1906, had due legal power and lawful authority to construct and operate its tunnel and railroad; that the time of the plaintiff to complete the construction of its tunnel would expire on the 31st day of December, 1906, and a judgment was duly entered in said action, wherein and whereby, among other things, it was adjudged and decreed that the city of New York and all and singular its officials, officers, employés and agents be, and they thereby were, enjoined and restrained from in any way molesting or interfering with the said plaintiff in the construction of its railroad; that said findings, determinations, and judgment still remain in force; that, after the passage of the said ordinance and the acceptance of the grants and privileges contained therein, said railroad company commenced and prosecuted the construction of a portion of the line of railroad upon the routes specified in said ordinances, as follows: (a) In Fourth street, Long Island City, from Van Alst avenue to the corner of West avenue; (b) in Long Island City from corner of Fourth street and West avenue through private property to the bulk-

head line of 1898 of the East river; (c) in the borough of Manhattan from the pier head and bulkhead line adopted under chapter 763, p. 638, Laws 1857, westerly through and along Forty-Second street to the Grand Central Depot, at the corner of Forty-Second street and Park avenue—that from the bulkhead line of 1898 in Long Island City, under the river to a strip along the Manhattan shore, owned by the city of New York, the construction of the line of railroad was upon a strip of land under water duly granted to the company by the state of New York through the commissioners of the land office; that the streets mentioned were and are owned by the city of New York and held by it as public streets, and that on the 1st day of January, 1907, and ever since, the railroad and tunnel of the New York & Long Island Railroad Company occupied and occupies a portion of said public streets by the tunnel constructed under the surface of the ground of said streets, which tunnel is occupied by tracks and other structures; that on the 1st day of January, 1907, said company had not completed its railroad or tunnel; that the same had been only partially constructed or completed, and said company had not operated its said railroad or tunnel on any part of its route; that by reason of the failure of said company to construct its railroad and tunnel before the 1st day of January, 1907, the corporate existence of the said railroad company lapsed, and by virtue of the provisions of section 30 of the general corporation law (Laws 1892, p. 1811, c. 687), the then directors of said railroad became trustees of the creditors, stockholders, and members of the said company, as provided in said section of said statute; that the defendants named herein were such directors on said date.

The questions submitted are as follows: (1) On January 1, 1907, did the franchise, rights, and privileges granted by the board of aldermen of the city of New York, as hereinabove set forth, to the New York & Long Island Railroad Company, cease and determine? (2) On January 1, 1907, did the franchises, rights, and privileges granted by the board of aldermen of Long Island City hereinbefore set forth to the company cease and determine? (3) Did on said January 1, 1907, the franchises, rights, and privileges specifically set forth in the first two questions pass to the defendants herein as trustees, under section 30 of the general corporation law, of the creditors, stockholders, and members of the New York & Long Island Railroad Company?

The plaintiff claims that upon the foregoing facts it is entitled to judgment determining that the franchises, rights, and privileges granted by said board of aldermen did on January 1, 1907, cease and determine; that they did not pass to defendants herein as trustees, and that plaintiff is entitled to enter, use, and enjoy all the portions of its streets and its land under water hereinabove mentioned occupied by the said tunnel, tracks, structures, and property of said company, and to prevent the use and occupation thereof by the defendants. On the contrary, the defendants claim that on January 1, 1907, the said franchises, rights, and privileges did not cease and determine, but did upon said date pass to defendants as trustees, as aforesaid, and that the occupation by the defendants of the tunnel, tracks, structures, and property of said company after January 1, 1907, in the streets of the

city of New York, in the borough of Manhattan, and in the borough of Queens, formerly Long Island City, as hereinabove set forth, is lawful, and that the plaintiff be enjoined from interfering therewith, and the parties agreed that the court should render such judgment as should be proper on the foregoing facts.

In New York & Long Island Railroad Company v. O'Brien, 121 App. Div. 819, 106 N. Y. Supp. 909, affirmed on opinion below 192 N. Y. 558, 85 N. E. 1113, this court passed upon the validity of the incorporation of the New York & Long Island Railroad Company and the validity of the consents for the construction of its railroad and tunnel upon its present route, theretofore granted by the municipal authorities of the then city of New York and Long Island City, and held that the company was legally organized and existing, and had the right to construct its tunnel and road. We said:

"The appellants claim that the plaintiff has forfeited its rights by lapse of time. By amendment to the railroad law of 1850, made by chapter 775, p. 1903, Laws 1867, it was provided that the corporate existence and powers of the company should cease if it should not within five years after the filing of its articles of association begin the construction of its road and expend thereon 10 per cent. of its capital or should not finish its road and put it in operation within ten years from said time. The articles of association were filed on the 30th of July, 1887. The company entered into a contract for the construction of its road in June, 1890, work was begun thereunder, and by July 30, 1892, upwards of 10 per cent. of the capital had been expended. The time for completion had been extended by chapters 700, p. 468, Laws 1895, chapter 647, p. 1430, Laws 1899, chapter 617, p. 1482, Laws 1901, chapter 487, p. 1142, Laws 1902, and chapter 597, p. 1282, Laws 1903, to January 1, 1907. As this case was commenced in February, 1906, and tried in June of the same year, the time of completion had not expired."

The question reserved in that case, viz., the effect of the expiration of the statutory period for completion of the work upon the rights, privileges, and franchises of the company, is now squarely before us for determination.

It is conceded that the work was not completed on the 1st of January, 1907. It is conceded that the company had commenced and prosecuted the construction from Van Alst avenue in Long Island City in Fourth street to the corner of West avenue, and from there through private property to the bulkhead line of the East River, and from thence under the river to the Manhattan shore, and from the bulkhead line of Manhattan through and along 42nd street to the Grand Central Depot. It is not shown in the agreed statement of facts how much of the tunnel and railroad remained to be constructed upon the 1st of January, 1907, how much money had up to that time been expended in the prosecution of the work, whether said money had been raised upon bonds secured by mortgages upon the road and its franchises, or from stockholders, what contracts it had made or were outstanding, what obstacles it had met which impeded completion, and whether physical or by interference of the officers or agents of the city. Merely the bald proposition is advanced that by the failure of the company to complete on the 1st day of January, 1907, not only did the corporation cease to exist, and lose its corporate capacity and powers, but that there ceased to exist as well whatever consents it had obtained from the municipalities by reason of which alone it

had the right to use and occupy a portion of the public streets beneath the surface, and that thereby its occupation of such streets became illegal, it was a mere trespasser, and the city had the right to retake complete possession and control thereof. The right to be a corporation and to exercise corporate powers is derived solely from the state. The power which creates has the right to destroy. The state has the right to limit the period of existence of its creature, the corporation, to provide conditions precedent or subsequent by laws existing at the time of its creation, or by laws subsequently passed to destroy its existence for such reasons as may seem to the Legislature sufficient. Upon these propositions there is and can be no doubt. They are put beyond controversy by repeated decisions of the Court of Appeals. The power to create, regulate, and destroy the corporation is one thing. The disposition of its property is quite another, governed by other considerations and guarded by constitutional provisions of great moment. "Whatever might have been the intention of the Legislature or even of the framers of our Constitution in respect to the effect of the power of repeal reserved in acts of incorporation upon the property rights of a corporation, such power must still be exercised in subjection to the provisions of the federal Constitution." People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684.

In the case cited the court had under consideration certain acts of the Legislature of 1886 (Laws 1886, p. 443, c. 268) repealing the charter of the Broadway Surface Railroad Company and dissolving its corporate existence. The company had applied to the municipality for authority to lay tracks and run cars over Broadway from the Battery to Fifteenth street. The consent of the city, by resolution of the common council, had been given upon the terms and conditions prescribed in the resolution granting it, amongst which was the annual payment of a considerable sum of money to the municipality. The company duly accepted the grant, and fully complied with and performed all of the terms and conditions provided therein to entitle it to acquire, construct, and operate its road. The court said:

"We think the material question for discussion here is whether the franchise to maintain tracks and run cars on Broadway survived the dissolution of the corporation, and, if so, upon whom the right of administering its affairs devolved. * * * The title to streets in New York is vested in the city in trust for the people of the state, but under the Constitution and statutes it had authority to convey such title as was necessary for the purpose to corporations desiring to acquire the same for use as a street railroad The city had authority to limit the estate granted either as to the extent of its use or the time of its enjoyment, and also had power to grant an interest in its streets for a public use in perpetuity which should be irrevocable. * * * Grants similar in all material respects to the one in question have heretofore been before the courts of this state for construction, and it has been quite uniformly held that they vest the grantees with an interest in the street in perpetuity for the purposes of a street railroad. * * * We are therefore of the opinion that the Broadway Surface Railroad Company took an estate in perpetuity in Broadway through its grant from the city under the authority of the Constitution and the act of the Legislature. It is also well settled by authority in this state that such a right constitutes property within the usual and common signification of that word. Sixth Ave. R. Co. v. Kerr, 72 N. Y. 330; People v. Sturtevant, 9 N. Y. 263, 59 Am. Dec. 536. * * * The laws of this state have made such interest taxable, inheritable, alienable, subject to levy and sale under execution, to condemnation under

the exercise of the right of eminent domain, and invested them with the attributes of property generally. * * * Indeed, it is a matter of public history that one-half of the railroads of the state are now operated by organizations other than those to whom the franchises were originally granted, notwithstanding their dissolution, through transfers effected by the foreclosure of mortgages and otherwise. The statutes cited, as well as others not specially referred to, indicate the general policy of the state to render such interests independent of the life of the original corporation and transferable as property by means of judicial proceedings and otherwise under certain restrictions not pertinent to our present purpose particularly to consider. People v. Brooklyn F. & C. I. R. R. Co., 89 N. Y. 84. * .* * The court also held (in that case) that, upon a foreclosure of the property and franchises of a railroad corporation, an individual could lawfully become their purchaser, and could hold and transfer them to any corporation having or acquiring the right to exercise such franchises. * * * It may * * * be conceded that the state had authority to repeal this charter, provided no rights of property were thereby invaded or destroyed. In speaking of the franchises of a corporation, we shall assume that none are assignable except by the special authority of the Legislature. We must also be understood as referring only to such franchises as are usually authorized to be transferred by statute, viz., those requiring for their enjoyment the use of corporeal property, such as railroad, · canal, telegraph, gas, water, bridge, and similar companies, and not to those which are in their nature purely incorporeal and inalienable, such as the right of corporate life, the exercise of banking, trading and insurance powers, and similar privileges. The fanchises last referred to, being personal in character and dependent upon the continued existence of the donee for their lawful exercise, necessarily expire with the extinction of corporate life, unless special provision is otherwise made. * * * The contention that the property of a dissolved corporation is forfeited rests wholly upon what is claimed to be the necessary consequence of the extinction of corporate life. We do not think the dissolution of a corporation works any such effect. It would not naturally seem to have any other operation upon its contracts or property rights than the death of a natural person upon his. * * * Here the grantee has performed every condition essential to its creation as a corporate being and its capacity to acquire and hold property, and the only question is as to the effect of a power to extinguish the corporate life, reserved in its charter, upon its property rights. * * * We are therefore of the opinion that the Broadway Surface Company took an indefeasible title to the land necessary to enable it to construct and maintain a street railroad in Broadway, and to run cars thereon for the transportation of freight and passengers, which survived its dissolution. * * * Sections 9, 10, tit. 3, c. 18, pt. 1, pp. 1531, 1532, Rev. St. (7th Ed.) * * * · read as follows:

" 'Sec. 9. Upon the dissolution of any corporation created or to be created, and unless other persons shall be appointed by the Legislature, or by some court of competent authority, the directors or managers of the affairs of such corporation at the time of its dissolution, by whatever name they may be known in law, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys and other property that shall remain after the payment of debts and other necessary expenses.

" 'Sec. 10. The persons so constituted trustees shall have authority to sue for and recover the debts and property of the dissolved corporation, * * * and shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall come into their hands.'

"From these sections it would seem that upon the dissolution of this corporation its remaining trustees became vested with the title of its property, and responsible to its creditors and stockholders for the value thereof. * * * The act attempts to preserve the validity of the consents held by the corporation notwithstanding its dissolution, and directs their sale and transfer to the purchaser, and the payment of the purchase price to the

·city. These consents were the muniments of title to the enjoyment of the rights acquired thereunder by the railroad corporation, and could not be lawfully retained in existence or transferred except by its consent, manifested in some of the ways provided by law. Their possession by any lawful transferee would entitle him to the exercise and use of the rights thereby conferred. The attempt to transfer them to a third party by the mere force of the statute, without the consent or knowledge of their lawful owners, was an effort to change their ownership without due process of law. * * * The main argument presented to maintain the constitutionality of this act, is the assertion that these consents do not constitute property within the usual signification of that term. We have considered that question, and do not agree with the claim. In view of the fact that the statute expressly contemplates their sale, transfer, and acquisition by a purchaser, it would seem unnecessary to go further to prove the fallacy of such a contention."

I have quoted freely from the opinion of Chief Judge Ruger in the O'Brien Case, because the doctrine that municipal consents acted upon are property has been by that case decided at a time of great public indignation and under very peculiar circumstances established as the settled law of this state.

Matter of Brooklyn, Q. C. & S. R. R. Co., 185 N. Y. 171, 77 N. E. 994, was an appeal from an order denying a motion for a peremptory writ of mandamus to compel certain city officers to grant to the petitioner a permit to open the pavement on Saratoga avenue in the city of Brooklyn for the purpose of constructing thereon a double-track surface railroad. The Broadway Railroad Company for many years prior to 1893 had been a street surface railroad corporation owning and operating a double-track street surface railroad on Broadway and other streets in the city of Brooklyn. On May 28, 1893, it caused to be filed and recorded a certificate of extension of its road between certain limits upon Saratoga avenue in said city. On July 24, 1893, the common council of the said city granted its consent to said company to construct, maintain, and operate its proposed extension. In November, 1893, the Brooklyn, Queens County & Suburban Railroad Company was duly incorporated as a street surface railroad corporation, and on January 16, 1894, being then the lessee of the rights, property, and franchises of the Broadway Railroad Company, took a surrender and transfer of all the capital stock of said latter company, which thereby became merged into and with the Brooklyn, Queens County & Suburban Railroad Company, which, in turn, thereby became the owner of, among other property, the rights, privileges, and franchise above referred to, to construct and operate the extension in Saratoga avenue. Some time between January 16, 1894, and September 30, 1903, the petitioner obtained the requisite consents of the property owners for the construction of said extension, but down to the time of the institution of this proceeding, at said latter date, it had never taken any steps to commence or complete the construction of the same. Referring to section 5 of the railroad law, and section 99 of said law, as enacted in chapter 565, p. 1112, Laws 1890, and holding that section 5 was self-executing, and section 99 not, the court proceeded along this line of argument:

"In fact, we think that both sections are needed to protect the public from undue delay upon the part of a corporation in commencing and completing its road. 'Section 99 requires the corporation to commence and complete the

construction of its road within a certain period after the consent of the local authorities and property owners or the substitutes for the latter have been obtained. This protection is valuable so far as it goes, but it does not cover the entire subject. It does not specify any time within which such consents must be obtained, and, so far as its provisions are concerned, a railroad company after filing its certificate of incorporation  *  *  *  might delay indefinitely before proceeding to a point where it would be compelled to commence and complete its road. Section 5 supplements these provisions of the later section by requiring a corporation to proceed within a certain time fixed by the date of filing its certificate of incorporation.  *  *  *  This requirement may or may not be as valuable and necessary as that prescribed by section 99, but it secures the public benefit that a corporation taking advantage of a statute allowing it to become incorporated for the purpose of building a railroad  *  *  *  must exercise the privileges thus conferred within a certain time or else forfeit them. Furthermore, and what is especially pertinent here, we are unable to see any inconsistency or repugnancy between such requirements and those provided by section 99. Each section commands that, as a return for privileges conferred upon it, a street surface railroad shall within a certain time take steps to utilize these privileges, and make them a possible subject of use and benefit to the public. Neither section is hostile to the other, but both supplement each other, and provide for the exercise of not unreasonable diligence by a corporation in return for privileges which are granted in part at least that it may. serve public convenience and utility."

Referring to certain statutes which were claimed to affect the time limit, the court said:

"If we assume that these enactments were intended to accomplish the purpose claimed for them, we still think that they were ineffectual so to do. At the time they were passed appellant had absolutely forfeited and lost its franchise to construct the road in Saratoga avenue and all of its rights thereunder. Matter of Brooklyn, W. & N. Ry. Co., 72 N. Y. 245. The municipality, upon the other hand, had regained by forfeiture all of the rights which it had once granted to the appellant. Both parties to the original franchise had been restored to precisely the same position which they occupied before it was granted."

We therefore have upon the one hand, in People v. O'Brien, supra, a situation presented where a railroad corporation, having obtained the consent of the city for the construction, maintenance, and operation of a railroad in a public street upon certain conditions, had complied with all the conditions prescribed, had mortgaged its road and had entered into contracts, and where the 'Legislature, having determined that the methods by which the corporation had obtained from the local authorities said consents were vicious and criminal, had decreed the dissolution of the corporation, and had undertaken to transfer back to the city the rights granted under the city's consent, in order that the city might again dispose of it to other purchasers and receive proper remuneration therefor. Under such circumstances, although the court held that so far as the dissolution of the corporation and the extinction of its powers flowing from and incident to its right to be a corporation were concerned, the Legislature acted entirely within its jurisdiction, nevertheless it held that the consent of the municipality by virtue of which alone the corporation had the right to construct, maintain, and operate a railroad on the public street, when the corporation had accepted such consent and had fully performed the conditions required, and had proceeded to construct the road and exercise the other acts incidental to such construction, be-

came property, a grant in perpetuity of the right to maintain and operate a railroad upon the street, irrevocable in its nature, and beyond destruction by legislative act; that as property it passed with the tangible property of the company, upon its dissolution, into the hands of its last directors, as trustees, was vested in them, and became transferable by them precisely as any other property of the company.

Under this case a consent acted upon, which for convenience has come to be called a special or secondary franchise, and the rights and privileges thereunder flowing from a municipality, is differentiated from the right to be a corporation and to exercise the general powers thereof granted by the state, is property, and within the protection of· all the constitutional provisions, state and national, for the protection of property. On the other hand, in the Brooklyn, Q. C. & S. R. R. Co. Case, supra, it was held that, when the company caused to be filed and recorded a certificate of extension of its road, that certificate was in effect clearly and simply an amendment of its original articles of incorporation and the date of filing thereof fixed the period within which the corporation must act as to said extension, and, although it had obtained the requisite consents from the municipality and from the property holders, yet nevertheless, where it had done nothing except to obtain those consents within the time limited by the statute, the company had absolutely forfeited and lost its franchises on such extension, and all of its rights thereunder the municipality had regained by forfeiture all of the rights which it had once granted, and both parties had been restored to precisely the same position which they occupied before said franchise was granted. .In other words, on the one hand completed use had transformed the consent into property; on the other absolute nonuser had resulted in forfeiture of the right to use.

Between these two extremes of complete use and of complete nonuse lies the case at bar. It is conceded in the statement of facts that the corporation has ceased to exist; that its powers, incidental to corporate existence, derived from the state, have been forfeited to the state. Those powers are those prescribed by law, being the general powers conferred upon corporations, as to be a corporation, to sue and be sued, have a corporate seal, to acquire and hold property, and to mortgage the same, and the additional powers of a general nature conferred upon railroad corporations by the general provisions of the act under which it was incorporated. Those powers it can no longer exercise. But, as the state has said its powers shall cease, so it has said its property shall be preserved, and shall vest in its directors as trustees for the benefit of its creditors and members. The consent of the municipal authorities, when acted upon, ceases to be a power and becomes property, and, like other property, is not lost like a power, but preserved and vested in the trustees.

This corporation, by signed and sealed paper, accepted the consents of the municipal authorities with all the conditions thereto attached. That is conceded. It proceeded to act upon these consents. Within five years it had commenced construction and had expended 10 per cent. of its capital therein. It therefore had passed the first critical state in its existence. It has nearly completed its road. It is physical-

ly in the streets, as to which it had a consent. It has expended large sums of money which it was only enabled to get by virtue of the consent of the local authorities which consent has become attached to the tangible property put into construction, by excavations, by building the tunnel, by tracks in the streets, and under the river, and by the purchase of private property, through a portion of which the road runs. Under these circumstances, it seems to me that those consents which were not limited in time or dependent upon expenditure by the acts of their creators, to wit, the municipal authorities, were as much the property of the corporation before its dissolution, as its physical property; that they were attached to that tangible property, and made it possible, because by them alone did the corporation have the right to go into public streets. As so much had been done upon ac-·ceptance of the municipal consents and in reliance thereon, it is impossible that both parties can be restored to precisely the same position which they occupied before the franchise was granted as was the case in the Brooklyn, Q. C. & S. R. R. Co. Case, as pointed out by Hiscock, J. No court has yet said that under such circumstances, as in the case at bar, the limitation put by the state upon the franchise to be a corporation can be attached to the grant of the consent of the municipality once given and acted upon, and thereby transmuted into property. It seems to me that no court which has once regarded as property these. so-called special or secondary franchises when acted upon will say that they cease to be property because the corporation to which they were granted has either committed suicide or been executed or died a natural death. But, as in the case of the death of a natural person, his property and property rights become vested in his representatives, either his heirs, executors, administrators, or next of kin, so in the case of this artificial person these consents so acted upon with its other property become vested in its representatives, its trustees, to collect and dispose of, for the payment of its debts and distribution among those entitled to the surplus, if any there be.

We think, therefore, that the question submitted should be answered in favor of the defendants; that the franchises, rights, and privileges granted by the several boards of aldermen did not cease and determine on January 1, 1907, but did pass to the defendants herein as trustees, under section 30 of the general corporation law, of the creditors, stockholders, and members of the New York & Long Island Railroad Company; that the occupation by the defendants of the tunnels, tracks, structures, and property of the company in the streets of the city of New York, in the borough of Manhattan, and the borough of Queens is lawful; and that the plaintiff should be enjoined from interfering therewith.

Judgment ordered accordingly for defendants, with costs. All concur.